[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Barker,* Slip Opinion No. 2016-Ohio-2708.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-2708

THE STATE OF OHIO, APPELLEE, *v.* BARKER, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Barker,* Slip Opinion No. 2016-Ohio-2708.]

*Constitutional law—Fifth Amendment—Rights to counsel and due process and privilege against self-incrimination—R.C. 2933.81(B)—Statutory presumption that electronically recorded statements made during custodial interrogation in place of detention are voluntary does not affect reviewing court's analysis of whether defendant waived* Miranda *rights—R.C. 2933.81(B) is unconstitutional as applied to juveniles because it impermissibly eliminates state's burden of proving voluntariness of custodial statement and places burden on defendant to prove that statement was involuntary—Court of appeals' judgment reversed and matter remanded.*

(No. 2014-1560—Submitted November 17, 2015—Decided April 28, 2016.)

APPEAL from the Court of Appeals for Hamilton County, No. C-130214, 2014-Ohio-3245.

_____

**FRENCH, J.**

**{¶ 1}** In this appeal, we examine the constitutional rights implicated by the custodial police interrogation of a juvenile suspect as well as the attendant constitutional limitations on interrogation that safeguard those rights. We also consider whether, and to what extent, the General Assembly may legislatively affect those rights and limitations without running afoul of due process.

**{¶ 2}** More specifically, we consider here the interaction between R.C. 2933.81(B) and a juvenile suspect's Fifth Amendment rights to counsel and against self-incrimination as articulated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and his right to due process. As relevant here, R.C. 2933.81(B) provides as follows:

> All statements made by a person [suspected of enumerated crimes] during a custodial interrogation in a place of detention are presumed to be voluntary if the statements made by the person are electronically recorded. The person making the statements during the electronic recording of the custodial interrogation has the burden of proving that the statements made during the custodial interrogation were not voluntary.

**{¶ 3}** Appellant, Tyshawn Barker, argues that R.C. 2933.81(B) does not affect the analysis of whether a suspect intelligently, knowingly, and voluntarily waived his *Miranda* rights and, therefore, that the state retains the burden to prove a valid waiver. He also argues that as applied to statements a juvenile makes during a custodial interrogation, the R.C. 2933.81(B) presumption that such statements are voluntary is unconstitutional because it violates the juvenile's right to due process. On both counts, we agree.

***Facts and procedural background***

**{¶ 4}** On October 17, 2011, shortly before midnight, Cincinnati Police Detectives Kurt Ballman and Terry McGuffey questioned 15-year-old Barker at the offices of the Cincinnati Police Department Homicide Unit, in relation to the fatal shootings of Ruddell Englemon and Carrielle Conn. Another suspect in the shootings, Dequantez Nixson, implicated Barker during questioning earlier that evening, and the police found Barker at Nixson's residence during the execution of a search warrant. Barker was undisputedly in police custody when he was questioned.

**{¶ 5}** The detectives began their interrogation, which was electronically recorded, at 11:57 p.m. by asking Barker his name, address, telephone number, school, mother's name, whether he could read and write, whether he had taken drugs or alcohol that day, and whether he had any health problems. The following exchange then occurred:

> DETECTIVE BALLMAN: I have got to read something to you. * * * What I'm going to do is I'm going to read you a notification.
>
> DEFENDANT BARKER: Um-hmm.
>
> DETECTIVE BALLMAN: All right. When we are done I'm going to ask you if you understand it.
>
> DEFENDANT BARKER: Okay.
>
> DETECTIVE BALLMAN: And then I am going to ask you to sign it. You're not admitting to anything. I am just telling you it just says that I read you this, okay?
>
> DEFENDANT BARKER: Okay.

**{¶ 6}** Detective Ballman proceeded to read Barker his *Miranda* rights—that he had the right to remain silent, that anything he said could be used as evidence against him, and that he had the right to the presence of an attorney, either retained or appointed if he could not afford one—as printed on a form entitled "CINCINNATI POLICE DEPARTMENT NOTIFICATION OF RIGHTS." Barker said that he understood what Detective Ballman had read, and he signed the notification-of-rights form below the preprinted statement, "I understand my rights." The form does not indicate that Barker was waiving his rights, nor did the detectives tell Barker that signing the form constituted a waiver.

**{¶ 7}** The detectives then questioned Barker's understanding of his rights:

DETECTIVE McGUFFEY: Tyshawn are you familiar with that form? You have heard of Miranda rights before?

DEFENDANT BARKER:    No, sir, my first time.

DETECTIVE BALLMAN:   First time you have read, but you have seen it on t.v., right?

DEFENDANT BARKER:    Yes, sir.

DETECTIVE McGUFFEY: The whole thing about you have the right to remain silent and all that stuff?

DEFENDANT BARKER:    Yeah.

**{¶ 8}** The detectives continued their interrogation without inquiring whether Barker wanted to continue or wanted to speak with an attorney, and Barker implicated himself in the shootings of Englemon and Conn.

**{¶ 9}** The detectives briefly questioned Barker again during the evening of October 18, 2011. When Detective Ballman stated that he was going to reread Barker his rights, Barker stated, "I seen an attorney—an attorney, whatever that

4

is. * * * And she told me if you all to come up here just to ask for an attorney." Detective Ballman then asked whether Barker wanted to ask for an attorney, but Barker responded, "Just go on." Detective Ballman reread Barker his *Miranda* rights, and Barker again indicated that he understood. Detective Ballman wrote on the notification-of-rights form, "Attorney, still states will answer questions." The interview lasted only four minutes and consisted entirely of Barker's identification of codefendant Brendan Washington from a photograph.

{¶ 10} Barker was charged as a juvenile with aggravated murder and murder in relation to the deaths of Englemon and Conn. The juvenile court found probable cause to believe that Barker had committed the alleged offenses and ordered an amenability evaluation.

{¶ 11} Dr. Paul Deardorff evaluated Barker's mental health and filed a report with the juvenile court. Dr. Deardorff noted test evidence suggesting that Barker was "mildly mentally retarded," but he opined that Barker appeared to be "of borderline intelligence." Barker informed Dr. Deardorff that he had an individualized education program at school because " 'I can't comprehend good.' " Barker's academic abilities ranged from the third-grade to the fifth-grade level, and Dr. Deardorff stated that Barker might suffer from a learning disability.

{¶ 12} Upon consideration of Dr. Deardorff's report and the evidence presented at the probable-cause hearing, the juvenile court relinquished jurisdiction and bound Barker over to the common pleas court.

{¶ 13} The Hamilton County Grand Jury indicted Barker on four counts of aggravated murder with firearm specifications and specifications that Barker, Washington, and Nixson purposefully killed Englemon and Conn to prevent their testimony in other criminal proceedings. The aggravated-murder counts related to Conn included additional specifications that Barker and his two codefendants committed the offense for the purpose of escaping detection, apprehension, trial or punishment for Englemon's death. The indictment also included two counts of

conspiracy to commit, promote or facilitate aggravated murder, two counts of aggravated robbery, and three counts of tampering with evidence (on the night of Conn's murder), all with firearm specifications.

{¶ 14} Barker moved to suppress the statements he made during his custodial interrogation, arguing that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights and that his statements were not voluntary. At the suppression hearing, the state introduced Barker's custodial statements through the interrogation transcript, the audio and video recordings, and the signed notification-of-rights form. Detective Ballman testified that he had no reason to believe that Barker did not understand his *Miranda* rights. The state argued that because Barker's interrogation was electronically recorded, Barker had the burden under R.C. 2933.81(B) to demonstrate that his statements were involuntary. Barker's counsel cross-examined Detective Ballman but did not present any affirmative evidence.

{¶ 15} The trial court denied Barker's motion to suppress without mentioning either R.C. 2933.81(B) or the presumption of voluntariness. Although the trial court did not expressly find that Barker knowingly, intelligently, and voluntarily waived his *Miranda* rights, it found that Barker voluntarily made statements to the police after being properly advised of, and with an understanding of, his rights.

{¶ 16} Barker pled no contest to four counts of aggravated murder, two counts of aggravated robbery, and three counts of tampering with evidence, all with firearm specifications. The trial court found Barker guilty consistently with his pleas and sentenced him to an aggregate prison term of 25 years to life.

{¶ 17} On appeal, Barker initially challenged only his bindover and the effectiveness of his counsel during the bindover proceedings. In a supplemental brief, however, Barker additionally argued that the trial court erred by overruling his motion to suppress because he did not knowingly, intelligently, and

voluntarily waive his *Miranda* rights. As part of that argument, Barker asserted that R.C. 2933.81(B) has no bearing on the requirement that a waiver of constitutional rights must be knowing, intelligent, and voluntary.

{¶ 18} The First District Court of Appeals affirmed Barker's convictions. The First District acknowledged that courts determine whether a defendant has knowingly, intelligently, and voluntarily waived *Miranda* rights based on the totality of the circumstances, but it went on to state that "[w]here, as here, the interrogation of the defendant is recorded electronically, the statements made are presumed to have been made voluntarily." 2014-Ohio-3245, ¶ 12, citing R.C. 2933.81. The court stated that nothing in the record refuted the presumption that Barker's statements were voluntary. *Id.* The court also reviewed the recording of Barker's interrogation and stated that it found support for "the trial court's finding that [Barker] had voluntarily, knowingly and intelligently waived his *Miranda* rights," *id.* at ¶ 13, despite the absence of an express finding by the trial court to that effect.

{¶ 19} This court accepted jurisdiction to determine whether the presumption of voluntariness contained in R.C. 2933.81(B) violates due process when applied to a juvenile and whether that presumption affects a reviewing court's analysis of a purported waiver of *Miranda* rights. *See* 141 Ohio St.3d 1473, 2015-Ohio-554, 25 N.E.3d 1080.

*Analysis*

{¶ 20} The constitutional rights implicated by custodial interrogation and the procedural safeguards in place to protect those rights guide our determination of the reach and constitutionality of R.C. 2933.81(B). This appeal involves related issues that arise out of separate constitutional rights: whether Barker intelligently, knowingly, and voluntarily waived his *Miranda* rights and whether Barker voluntarily decided to speak with the detectives. *Miranda* rights arise from the Fifth Amendment to the United States Constitution, whereas the

necessity that a suspect's statement to police is voluntary implicates the guarantee of due process under the Fourteenth Amendment. *See Colorado v. Connelly*, 479 U.S. 157, 169-170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Here, Barker has challenged both whether the statements he made while in police custody were voluntary and whether he knowingly, intelligently, and voluntarily waived his *Miranda* rights before making the statements. We will address those challenges in reverse order.

### *Fifth Amendment Miranda rights*

{¶ 21} The Fifth Amendment to the United States Constitution guarantees that " '[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.' " (Ellipses sic.) *Miranda*, 384 U.S. at 442, 86 S.Ct. 1602, 16 L.Ed.2d 694. The inherently coercive nature of custodial interrogation heightens the risk that a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can " 'undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely.' " (Ellipsis sic.) *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), quoting *Miranda* at 467; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). That risk is even more troubling and acute when, as here, the subject of the interrogation is a juvenile. *J.D.B.* at 2401.

{¶ 22} In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Id.* In broad terms, *Miranda* held that the state may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444. Prior to questioning, the police must warn the suspect "that he has a right to remain silent,

that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. The Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. *Id.* at 469.

{¶ 23} If custodial interrogation continues in the absence of an attorney after a police officer advises a suspect of his rights, the government bears "a heavy burden" to demonstrate by a preponderance of the evidence that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to the police. *Miranda* at 475, citing *Escobedo v. Illinois*, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), fn. 14; *Connelly*, 479 U.S. at 169, 107 S.Ct. 515, 93 L.Ed.2d 473. *See also State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 749 (2001) (recognizing requirement of knowing, intelligent waiver). A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact that the suspect eventually confessed. *Miranda* at 475. Rather, the record must show " 'that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " *Id.*, quoting *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). If the state does not satisfy its burden, "no evidence obtained as a result of interrogation can be used." *Id.* at 479.

{¶ 24} To determine whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights, courts examine the totality of the circumstances. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). When the suspect is a juvenile, the totality of the circumstances includes "the juvenile's age, experience, education, background, and intelligence" as well as his "capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). A

juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 96.

### *R.C. 2933.81(B) does not apply to waiver of Fifth Amendment rights*

{¶ 25} Barker's second proposition of law asserts that the R.C. 2933.81(B) presumption that an electronically recorded custodial statement is voluntary does not affect the analysis of whether a suspect waived his *Miranda* rights, i.e., his rights to remain silent and to have an attorney. We turn, first, to the statute.

{¶ 26} R.C. 2933.81(B) states that "[a]ll *statements* made by a person * * * during a custodial interrogation in a place of detention are presumed to be voluntary if the statements made by the person are electronically recorded." (Emphasis added.) Nothing in R.C. 2933.81(B) creates a presumption regarding a waiver of constitutional rights; by its terms, the legislative presumption applies only to whether a statement itself was voluntary. And the voluntariness of a custodial statement does not answer whether the suspect knowingly, voluntarily, and intelligently waived his *Miranda* rights before making that statement, as those are distinct inquiries. *Connelly,* 479 U.S. at 163-164, 169-170, 107 S.Ct. 515, 93 L.Ed.2d 473; *State v. Eley*, 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996). Absent the state's compliance with *Miranda* and a suspect's valid waiver of his Fifth Amendment rights, even voluntary statements are inadmissible. *Dickerson*, 530 U.S. at 444, 120 S.Ct. 2326, 147 L.Ed.2d 405.

{¶ 27} We have held that there are no presumptions to aid the prosecution in proving a suspect's valid waiver of his Fifth Amendment rights. *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976), *vacated on other grounds*, *Edwards v. Ohio*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). *See also Miranda*, 384 U.S. at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694, quoting *Carnley*, 369 U.S. at 516, 82 S.Ct. 884, 8 L.Ed.2d 70. And even if the statutory presumption in R.C. 2933.81(B) did encompass the voluntariness of a suspect's

waiver, as opposed to merely the voluntariness of the suspect's statement itself, voluntariness is but one part of the inquiry under the Fifth Amendment. The state must prove not only that the suspect voluntarily waived his rights but also that the suspect acted knowingly and intelligently in doing so. *See State v. Dailey*, 53 Ohio St.3d 88, 91-92, 559 N.E.2d 459 (1990) (separately analyzing whether waiver was knowing and intelligent despite holding that a waiver is voluntary "absent evidence that [the suspect's] will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct").

**{¶ 28}** A legislature may not supersede the constitutional rule announced in *Miranda*. *Dickerson* at 444. Therefore, R.C. 2933.81(B) cannot lessen the protections announced in *Miranda* by removing the state's burden of proving a suspect's knowing, intelligent, and voluntary waiver of rights prior to making a statement during a custodial interrogation. Although *Miranda* allows for alternative legislative solutions that are " 'at least as effective in apprising accused persons of their right * * * and in assuring a continuous opportunity to exercise it,' " *Dickerson* at 440, quoting *Miranda* at 467, the act of recording a suspect's custodial statement does nothing to appraise a suspect of, or to protect the suspect's opportunity to exercise, his Fifth Amendment rights. While a recording might identify police coercion or its absence, nothing about the fact of recording ensures that a suspect understands his rights and knowingly and intelligently waives them. In short, applying R.C. 2933.81(B) to the question of a suspect's waiver of *Miranda* rights would impermissibly lower the state's burden of demonstrating a valid waiver of those rights.

**{¶ 29}** In this and other cases, the First District has conflated the questions of the voluntariness of a suspect's waiver of *Miranda* rights and the voluntariness of a suspect's custodial statement. Here, the First District applied R.C. 2933.81(B) in its discussion of the "Waiver of *Miranda* Rights," although it ultimately concluded that "[n]othing in the record refutes the presumption that

[Barker's] *statements* were made voluntarily." (Emphasis added.) 2014-Ohio-3245, at ¶ 12. It is not entirely clear from the First District's opinion how it applied R.C. 2933.81(B) with respect to the waiver issue in this case. But in other recent cases, the First District has expressly applied R.C. 2933.81(B) to the question whether a defendant knowingly, intelligently, and voluntarily waived *Miranda* rights and shifted the burden to the defendant to disprove waiver. *See In re K.C.*, 2015-Ohio-1613, 32 N.E.3d 988, ¶ 25 (1st Dist.) (state bears the burden of proving knowing, intelligent, and voluntary waiver of *Miranda* rights where R.C. 2933.81(B) does not shift that burden to the defendant); *State v. Bell*, 2015-Ohio-1711, 34 N.E.3d 405, ¶ 36 (1st Dist.), *appeal not accepted*, 143 Ohio St.3d 1480, 2015-Ohio-3958, 38 N.E.3d 901 (R.C. 2933.81(B) operates as an exception to the general rule that the state bears the burden to prove a knowing, intelligent, and voluntary waiver of *Miranda* rights).

**{¶ 30}** Contrary to the First District, we hold that the statutory presumption of voluntariness created by R.C. 2933.81(B) does not affect a reviewing court's analysis of whether a defendant waived his *Miranda* rights. The state retains the burden of proving a knowing, intelligent, and voluntary waiver by a preponderance of the evidence. *Miranda,* 384 U.S. at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Connelly*, 479 U.S. at 169, 107 S.Ct. 515, 93 L.Ed.2d. 473. Accordingly, we adopt Barker's second proposition of law.

### *Due-process rights*

**{¶ 31}** Constitutional principles of due process preclude the use of coerced confessions as fundamentally unfair, regardless of whether the confession is true or false. *Lego v. Twomey*, 404 U.S. 477, 483, 485, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), citing *Rogers v. Richmond*, 365 U.S. 534, 540-541, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Connelly* at 167.

**{¶ 32}** When a defendant challenges his confession as involuntary, due process requires that the state prove by a preponderance of the evidence that the confession was voluntary. *Lego* at 489. The same standard applies to adults and juveniles: " 'Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law.' " *In re Gault*, 387 U.S. 1, 27, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), quoting with approval *Haley v. Ohio*, 332 U.S. 596, 601, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (lead opinion). *See also In re Watson*, 47 Ohio St.3d 86, 548 N.E.2d 210 (1989), paragraph one of the syllabus.

**{¶ 33}** Barker's first proposition of law asserts that as applied to a juvenile, R.C. 2933.81(B) violates due process because juveniles require greater protections than adults during interrogation. Barker specifically argues that application of R.C. 2933.81(B) to a juvenile impermissibly shifts the burden of proving voluntariness from the state and places on the juvenile the burden of proving involuntariness, in violation of due-process requirements. The state responds that Barker waived his due-process challenge by not raising it in the trial court or the court of appeals and that a decision on this issue would be merely advisory.

**{¶ 34}** The state introduced R.C. 2933.81(B) into this case by arguing, in response to Barker's claim that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, that the statute imposed upon Barker the burden of proving that his recorded statements were involuntary. As we have already held, however, R.C. 2933.81(B) does not affect the resolution of whether Barker validly waived his *Miranda* rights. Moreover, the trial court did not rely on R.C. 2933.81(B) in denying Barker's motion to suppress. The issue whether R.C. 2933.81(B)'s burden-shifting paradigm, as applied to juveniles, violated due process was not apparent in the trial court.

**{¶ 35}** Barker's argument in the court of appeals mirrored the argument made in his motion to suppress that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. His appellate argument also asserted, presumably in response to the state's argument at the suppression hearing, that R.C. 2933.81(B) has no bearing on the requirement of a knowing, intelligent, and voluntary waiver. But the First District, while discussing Barker's argument that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, held that R.C. 2933.81(B) placed a burden on Barker to rebut the presumption that his statements to the police were voluntary.

**{¶ 36}** Barker concedes that he did not argue in either the trial court or the First District that application of R.C. 2933.81(B) to a juvenile would violate due process. But he claims that he raised that challenge "at the first opportunity— after the First District merged its analysis of whether [he] knowingly, intelligently, and voluntarily waived his *Miranda* rights * * * with the statutory presumption of voluntariness under R.C. 2933.81." Indeed, Barker had no reason to raise an as-applied due-process challenge in the trial court or in his appeal to the First District because the trial court did not apply R.C. 2933.81(B). It was the First District that applied R.C. 2933.81(B) in a manner that Barker contends violates due process. Barker promptly raised that challenge in his memorandum in support of jurisdiction before this court, and we accepted jurisdiction despite the state's assertion of waiver. *See* 141 Ohio St.3d 1473, 2015-Ohio-554, 25 N.E.3d 1080.

**{¶ 37}** Despite the dissent's charge that a decision on this issue contravenes our law regarding forfeiture and waiver, we reject the state's invitation to sidestep the due-process issue in this case. Even were we to agree with the state that Barker waived his due-process challenge to the application of R.C. 2933.81(B) to juveniles, review is appropriate here. In the criminal context, this court has considered constitutional challenges to the application of statutes

14

despite clear waiver "in specific cases of plain error or where the rights and interests involved may warrant it."  *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286 (1988).  *Accord* Crim.R. 52(B).  The constitutional rights at issue here and the importance of those rights to juveniles would justify our review even if Barker had waived a due-process challenge.  Thus, contrary to the dissent's imputation, review of Barker's due-process challenge is consistent with the law of this state.

{¶ 38} As applied to juveniles, the R.C. 2933.81(B) presumption violates due process.  To satisfy due process with respect to a challenged confession, the state must prove by a preponderance of the evidence that the confession was voluntary.  *Lego*, 404 U.S. at 489, 92 S.Ct. 619, 30 L.Ed.2d 618.  The due-process test for voluntariness takes into consideration the totality of the circumstances.  *Dickerson*, 530 U.S. at 433-434, 120 S.Ct. 2326, 147 L.Ed.2d 405, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

{¶ 39} The totality-of-the-circumstances test takes on even greater importance when applied to a juvenile.  A 14- or 15-year-old "cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions."  *Gallegos v. Colorado*, 370 U.S. 49, 53-54, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), citing *Haley*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224.  The United States Supreme Court has observed:

> [A] 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police.  That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and

who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.

*Id.* at 54.

{¶ 40} The United States Supreme Court's analysis in *Fare*, 442 U.S. at 724-725, 99 S.Ct. 2560, 61 L.Ed.2d 197, is instructive. There, the Supreme Court refused to deviate from the totality-of-the-circumstances test when the question was whether a juvenile had waived his *Miranda* rights. The totality-of-the-circumstances test allows courts necessary flexibility to consider a juvenile's age and experience. *Id.* at 725. The court stated as follows:

The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation, [including] evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Id.* It is these very features of the totality test that the statutory presumption in R.C. 2933.81(B) strips from the determination of whether a juvenile's statement was voluntary.

{¶ 41} " 'It is now commonly recognized that courts should take "special care" in scrutinizing a purported confession or waiver by a child.' " *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 106, quoting *In re Manuel R.*, 207 Conn. 725, 737-738, 543 A.2d 719 (1988), citing *Haley*, 332 U.S. at 599, 68 S.Ct. 302, 92 L.Ed. 224. When an admission is obtained from a juvenile without counsel, "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or

suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *In re Gault*, 387 U.S. at 55, 87 S.Ct. 1428, 18 L.Ed.2d 527.

{¶ 42} The totality of the circumstances from which a court must determine the voluntariness of a juvenile's statement includes not only the details of the interrogation but also the juvenile's unique characteristics. That analysis here would necessarily include consideration of factors such as Barker's age, the late-night time of the interrogation, the absence of a parent or guardian, Barker's "borderline intelligence" and third-grade reading level, Barker's statement that he was not familiar with *Miranda* rights other than having heard of them from television, and Barker's apparent confusion about what an attorney was. Application of the statutory presumption would remove all consideration of the juvenile's unique characteristics from the due-process analysis unless the juvenile introduced evidence to disprove voluntariness when the interrogation was electronically recorded. But there is no rational relationship between the existence of an electronic recording and the voluntariness of a suspect's statement. This is especially true where, as with R.C. 2933.81(B), the statute requires only that the *statement* sought to be admitted, not the entire interrogation, be recorded.

{¶ 43} In the end, the burden of establishing the voluntariness of a juvenile's custodial statement falls on the state. The General Assembly may not remove that burden via a presumption based on the existence of an electronic recording without running afoul of the due-process protections owed the child. States may adopt a higher standard under their own law, *Lego*, 404 U.S. at 489, 92 S.Ct. 619, 30 L.Ed.2d 618, but they may not lessen the standard that the United States Constitution requires. R.C. 2933.81(B) impermissibly eliminates the state's burden of proving the voluntariness of a custodial statement when the statement was electronically recorded and, instead, places the burden on the

defendant to prove that the statement was involuntary. For these reasons, we conclude that R.C. 2933.81(B), as applied to juveniles, is unconstitutional. Accordingly, we adopt Barker's first proposition of law.

## *Conclusion*

{¶ 44} The statutory presumption of voluntariness created by R.C. 2933.81(B) does not affect the analysis of whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights prior to making a statement to the police. As applied to juveniles, that presumption is unconstitutional. We therefore reverse the First District's judgment and remand this matter to that court to consider Barker's supplemental assignment of error without the R.C. 2933.81(B) presumption and with the understanding that the burden rested squarely on the state to demonstrate both that Barker knowingly, intelligently, and voluntarily waived his *Miranda* rights and that his statements to the police were voluntary.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents with an opinion that KENNEDY, J., joins.

_____

**O'DONNELL, J., dissenting.**

{¶ 45} Respectfully, I dissent.

{¶ 46} The majority opinion is another example of the court's haste to change the law regarding juveniles in Ohio. This rush to judgment tramples our law regarding the forfeiture of matters not raised in the trial court or otherwise presented for appeal or properly considered by an appellate court and what should be considered in a plain error analysis.

{¶ 47} In this case, Tyshawn Barker failed to challenge the constitutionality of R.C. 2933.81(B) in either his motion to suppress his

statements to police or in an assignment of error in the court of appeals, and he concedes in this court that "when the trial court overruled the motion to suppress, it did not apply the statutory presumption of voluntariness set forth in R.C. 2933.81(B)."

{¶ 48} The failure to challenge the constitutionality of a statute in the trial and appellate courts forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it. However, Barker has failed to demonstrate that the outcome would have been different, and there is nothing to suggest that but for the statutory presumption, his statement to police would have been suppressed.

{¶ 49} Accordingly, because the constitutionality of R.C. 2933.81(B) is not properly before the court, I would dismiss this appeal as improvidently accepted.

### Facts and Procedural History

{¶ 50} Barker, Dequantez Nixson, Brendan Washington, and Carrielle Conn went to an apartment building intending to shoot Samuel Jeffries, who had recently filed domestic violence charges against Nixson's mother. Barker and Nixson waited in the hallway while Washington and Conn knocked on Jeffries's door. However, Ruddell Englemon answered the door, and according to Barker, Nixson, and Washington, Conn shot him before the group fled the scene. Englemon later died from his injuries.

{¶ 51} Two days later, Nixson, Barker, and Washington, concerned that Conn would go to the police, lured her out into an isolated wooded area near some railroad tracks and shot her several times, killing her.

{¶ 52} The next day, the police took Barker, who was 15 years old at the time, into custody, and Detective Kurt Ballman read him his *Miranda* rights and confirmed that he understood them before questioning Barker about the shootings. After Barker responded, "Yes, sir," and signed a form acknowledging that he had

been informed of his rights, he made statements incriminating himself in both shootings.

{¶ 53} During a second interview, Barker informed detectives that he had seen an attorney, and when asked whether he wanted an attorney to be present, Barker stated, "I do want to talk to make the situation a little bit more better for you all, but—." Ballman replied to Barker, "Okay. You tell us what you want to do. * * * Are you asking for an attorney?" Barker answered, "Just go on." Ballman then reread Barker his *Miranda* rights and asked whether Barker understood. Barker replied, "Yes, sir." He then identified Washington from a photograph.

{¶ 54} The state filed a complaint in the juvenile court, alleging that Barker was delinquent for committing the aggravated murders of Conn and Englemon. The juvenile court found probable cause to believe that Barker committed these crimes and that he was not amenable to rehabilitation in the juvenile system, and it bound him over to the common pleas court.

{¶ 55} A grand jury indicted Barker for the aggravated murders of Englemon and Conn, with firearm specifications. There were also specifications that he and his two codefendants purposefully killed Englemon and Conn to prevent their testimony in other criminal proceedings and that they murdered Conn to escape detection, apprehension, trial, or punishment for Englemon's death. Barker was also indicted for conspiracy, aggravated robbery, and tampering with evidence, all with firearm specifications.

{¶ 56} Barker moved the trial court to suppress statements he made during the interrogation, asserting that he had not knowingly, intelligently, and voluntarily waived his *Miranda* rights. He did not, however, challenge the constitutionality of R.C. 2933.81(B). The trial court denied the motion, finding that Barker understood his rights and had voluntarily made statements to the police.

{¶ 57} Barker pleaded no contest to the charges against him. The trial court found him guilty of four counts of aggravated murder, two counts of aggravated robbery, and three counts of tampering with evidence, all with firearm specifications, and sentenced him to an aggregate term of 25 years to life in prison.

{¶ 58} Barker appealed to the First District Court of Appeals, arguing that defense counsel was ineffective for failing to present evidence on his behalf at his amenability hearing and that the juvenile court had abused its discretion when it bound him over for trial as an adult. He also filed a supplemental brief in which he argued that the trial court erred when it overruled his motion to suppress, asserting that he did not knowingly, intelligently, or voluntarily waive his *Miranda* rights. Barker did not challenge the constitutionality of R.C. 2933.81(B).

{¶ 59} The court of appeals affirmed Barker's convictions and held that the trial court's finding that Barker had knowingly, intelligently, and voluntarily waived his *Miranda* rights was supported by the record. The court of appeals stated that "[n]othing in the record refutes the presumption that Tyshawn's statements were made voluntarily" and that "[b]ased on our review of the recording, we conclude that the trial court's finding that Tyshawn had voluntarily, knowingly and intelligently waived his *Miranda* rights was supported by the record. The court properly denied the motion to suppress." 2014-Ohio-3245, ¶ 12-13.

### Positions of the Parties

{¶ 60} On appeal to this court, Barker asserts that the court of appeals' application of R.C. 2933.81(B) is plain error because it implicates the constitutional protections of the Due Process Clause as applied to a juvenile and violates the constitutional protections set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. He argues for the

first time in this case that the statutory presumption that a custodial statement is voluntary under R.C. 2933.81(B) is unconstitutional because it shifts the burden of proving that statements were voluntarily made from the state to the accused. He contends that a juvenile's will is more easily overborne by police pressure and inducements than an adult's and that requiring a juvenile to prove that a videotaped interrogation is involuntary thus violates due process. Barker further argues that the statutory presumption of voluntariness does not affect a reviewing court's analysis of whether the accused waived *Miranda* rights. He maintains that the court of appeals improperly applied the presumption from R.C. 2933.81(B) rather than the *Miranda* totality of the circumstances test.

{¶ 61} The state contends that res judicata bars Barker's claim that R.C. 2933.81(B) is unconstitutional because he did not raise the issue in the trial court or the court of appeals. It therefore maintains that Barker's request for this court to rule on the constitutionality of R.C. 2933.81(B) is tantamount to a request for an advisory opinion, because the trial court never presumed that Barker's statement was voluntary when it ruled on his motion to suppress, and the court of appeals did not apply the statute when considering whether Barker waived his *Miranda* rights but rather, reviewed the totality of the circumstances surrounding his interrogation.

{¶ 62} Barker responds that the constitutionality of R.C. 2933.81(B) was properly preserved, because he filed a motion to suppress the statements made during his interrogation and the appellate court reviewed that issue.

{¶ 63} Accordingly, before this court addresses Barker's challenge to R.C. 2933.81(B), a determination should be made regarding whether the matter is properly before this court for review.

## Law and Analysis

{¶ 64} In *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, we noted the "well-established rule that ' "an appellate court will not

consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." ' " *Id.* at ¶ 15, quoting *State v. Awan,* 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs,* 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. And this court "will not ordinarily consider a claim of error that was not raised in any way in the Court of Appeals and was not considered or decided by that court." *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph two of the syllabus.

{¶ 65} Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden of proof to demonstrate plain error on the record, *Quarterman* at ¶ 16, and must show "an error, *i.e.,* a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.3d 90 (2001). However, even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* Thus, as we recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice." (Emphasis sic.)

{¶ 66} But even where the accused demonstrates that a plain error affected the outcome of the proceeding, "an appellate court is not required to correct it; we have 'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." '

" (Emphasis sic.) *Id.* at ¶ 23, quoting *Barnes* at 27, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 67} Here, Barker did not raise any challenge to R.C. 2933.81(B) in his motion to suppress filed in the trial court or in an assignment of error on appeal. Rather, he argued only that he did not knowingly, intelligently, or voluntarily waive his *Miranda* rights, and although he briefly addressed the statutory presumption of voluntariness in his appellate brief, he nonetheless did not question the statute's constitutionality before the appellate court. Accordingly, Barker has forfeited all but plain error, and it is his burden to demonstrate a reasonable probability that but for an error in applying R.C. 2933.81(B), his statements would have been suppressed.

{¶ 68} In my view, there is no reasonable probability that Barker's statements to police would have been suppressed, and reversal here is not necessary to correct a manifest miscarriage of justice. Importantly, Barker concedes that the trial court did not apply R.C. 2933.81(B) when it denied his motion to suppress, and therefore he cannot demonstrate that it committed any error, much less plain error, in this regard. And although the court of appeals acknowledged the existence of R.C. 2933.81(B), there is no indication that it would have ordered Barker's statements suppressed but for the statutory presumption that statements made during an electronically recorded interrogation of a suspect are voluntary. As the appellate court recognized, it had the duty to defer to the trial court's factual findings, and based on its independent review of the interrogation recording, it upheld the trial court's finding that Barker knowingly, intelligently, and voluntarily waived his *Miranda* rights. Nothing in the record shows that the statutory presumption materially impacted the appellate court's analysis or that the trial court erred in denying the motion to suppress.

{¶ 69} Thus, this is not a case in which the accused's statement to police would have been suppressed but for the presumption of voluntariness established

by R.C. 2933.81(B), and because the constitutional question at issue here has not been presented for consideration by the trial and appellate court in the first instance, it is not properly before our court. For these reasons, I would dismiss the appeal as improvidently accepted.

KENNEDY, J., concurs in the foregoing opinion.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Rachel Lipman Curran, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Sheryl Trzaska, Assistant Public Defender, for appellant.

Marsha L. Levick and Steven A. Drizin, urging reversal for amici curiae, Juvenile Law Center and Center on Wrongful Convictions of Youth, Bluhm Legal Clinic, Northwestern University School of Law.

_____