[Cite as *State v. Jacks*, 2022-Ohio-4374.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2022-0013 |
| JORDAN JACKS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:    Criminal appeal from the Muskingum
County Court of Common Pleas, Case No.
CR2021-0424

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    December 7, 2022

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

RONALD L. WELCH                      CHRIS BRIGDON
Prosecuting Attorney                     8138 Somerset Road
BY: TAYLOR P. BENNINGTON        Thornville, OH 43076
Assistant Prosecutor
27 North Fifth Street, Box 189
Zanesville, OH 43702

*Gwin, P.J.,*

{¶1} Defendant-appellant Jordan Jacks ["Jacks"] appeals his convictions and sentences after a jury trial in the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

{¶2} The Muskingum County Grand Jury returned an Indictment charging Jacks with one count of Domestic Violence, a misdemeanor of the first degree in violation of R.C. 2919.24(A), one count of Abduction, a felony of the third degree in violation of R.C. 2905.02(A)(2), four counts of Kidnapping, felonies of the first degree in violation of R.C. 2905.01(A)(3), and one count of Felonious Assault, a felony of the second degree in violation of R.C. 2903.11(A)(1). The charges were the result of a domestic dispute occurring on August 8, 2021.

{¶3} On November 30, 2021, Jacks filed a Motion to Suppress based on a violation of his right against self-incrimination. Specifically Jacks argued that he was "in custody" when he was questioned by the responding sheriff's deputy. Jack's further argued that because the deputy failed to read Jacks his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966), all of Jack's statements should be suppressed.

{¶4} The trial court conducted an evidentiary hearing on Jack's motion on December 14, 2021.

**The Suppression Hearing**

{¶5} Sergeant Wade Kanavel of the Muskingum County Sherriff's Office testified that he was dispatched to a domestic call during the night or early morning hours of August 8, 2021. Supp. T. at 6. Deputy Finley arrived a short time later. Id. at 7. After

observing the couple through a window engaged in a verbal argument, Sergeant Kanavel knocked on the door. Sergeant Kanavel shone his flashlight upon himself so the occupants would know he was a law enforcement officer. Jacks answered the door. Sergeant Kanavel testified that he asked Jacks what was going on and if he would come outside to talk to the deputy. Id. at 7. Deputy Finley went inside the residence to speak with Jack's girlfriend. Supp. T. at 8.

{¶6} Jacks was sitting on the top step of the front porch of the residence. Id. at 9. Sergeant Kanavel was at the bottom of the steps. Jacks denied doing anything physical to his girlfriend. Id. at 8. Jacks never told the Sergeant that he does not wish to answer questions, or that he wanted to leave. Sergeant Kanavel testified that he did not tell Jacks that he was forbidden from leaving at any time. Id. at 10.

{¶7} Deputy Finley exited the residence and he and Sergeant Kanavel walked away from the home toward the street where the police cruiser was parked to confer. Id. at 9. After conferring, Sergeant Kanavel again spoke to Jacks to ask him about the statements that the girlfriend made to Deputy Finley. Id. at 10. Deputy Finley went back inside the residence to speak again with the girlfriend. Id. at 11.

{¶8} When Deputy Finley exited the residence, he and Sergeant Kanavel again walked toward the street to confer. Supp. T. at 11. At this point the decision was made to place Jacks under arrest. Jacks was handcuffed and secured in Deputy Finley's patrol car. Id. At no time was Jacks advised of his *Miranda* rights. Id.

{¶9} Jacks testified he was ordered to come outside and sit down by Sergeant Kanavel. Supp. T. at 29. At one point, Jacks stood up to go and get a cigarette and Sergeant Kanavel told him to sit back down. Id. at 33-34. However, Jacks was able to

walk away to retrieve a cigarette, return to his seat on the steps of the porch, and to smoke the cigarette while talking to Sergeant Kanavel. Id. at 34. Jacks testified that he was physically intimidated by Sergeant Kanavel, especially when he was told to sit back down. Supp. T. at 30. Jacks further testified that he felt he was required to answer the Sergeant's questions. Id. Jacks claimed, "He kept pressing more information from me, and I wasn't wanting to give any more information or wanting to talk anymore, but he just kept asking and kept asking." Id. Jacks testified that Sergeant Kanavel and Deputy Finley were 30 feet away when he was told to stay there while they were conferring near the police cruiser. Id. at 38.

{¶10} By Judgment Entry filed December 14, 2021, the trial court overruled Jacks' motion to suppress.

{¶11} A jury trial was commenced on December 14, 2021 and concluded the following day. The jury found Jacks guilty of domestic violence, abduction and felonious assault. The jury found Jacks not guilty of four counts of kidnapping. Sentencing was deferred pending a Pre-sentence investigation report.

{¶12} A sentencing hearing took place on February 7, 2022. The trial court sentenced Jacks to 180 days of jail on the conviction for domestic violence, 30 months incarceration on the conviction for abduction and an indefinite term of five years to 7 ½ years on the felonious assault conviction. The sentences were ordered to be served concurrently.

*Assignment of Error*

{¶13} Jacks raises one Assignment of Error,

**{¶14}** "I. THE DETENTION OF THE APPELLANT, BY DEPUTY KANAVEL, WAS CUSTODIAL AND THEREFORE THE APPELLANT'S RIGHT AGAINST SELF-INCRIMINATION PURSUANT TO THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WOULD APPLY. SINCE NO MIRANDA WARNING WAS GIVEN, THE TRIAL COURT'S ORDER DENYING THE MOTION TO SUPPRESS EVIDENCE, BASED ON THE CUSTODIAL DETENTION, WAS IN ERROR."

*Law and Analysis*

**{¶15}** In his sole Assignment of Error, Jacks argues that Sergeant Kanavel subjected him to improper custodial interrogation without advising him of his *Miranda* rights. Jacks further contends that the trial court's comparison of the questioning in this case as similar to a traffic stop was error.[1]

**Standard of Appellate Review**

**{¶16}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as

---

[1] Jacks does not raise any assignment of error relating to his jury trial. Jacks confines his arguments to the trial court's ruling upon his motion to suppress.

true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶17} "[T]he weights of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials." *State v. Fanning*, 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583(1982). *Accord State v. DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972(1992).

**Issue for appellate review:** *Whether Jacks was subjected to custodial interrogation*

### *Miranda v. Arizona.*

{¶18} The Fifth Amendment to the United States Constitution guarantees that "'[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.'" (Ellipses sic.) *Miranda v. Arizona,* 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Accord, State v. Barke*r, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶21. The inherently coercive nature of custodial interrogation heightens the risk that a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial

interrogation can "'undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely.'"  (Ellipsis sic.)  *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), *quoting Miranda* at 467, 86 S.Ct. 1602; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶19}  In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination.  Id.  In broad terms, *Miranda* held that the state may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444, 86 S.Ct. 1602.  Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  Id.  The Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. Id. at 469, 86 S.Ct. 1602; *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶22.

{¶20}  *Miranda* conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.  *Missouri v. Seibert*, 542 U.S. 600, 608, 124 S.Ct. 2601, 159 L.Ed.2d 643(2004).

***Custody under Miranda.***

{¶21}  The United States Supreme Court has explained,

As used in our *Miranda* case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of "the objective circumstances of the interrogation," *Stansbury v. California*, 511 U.S. 318, 322–323, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (*per curiam*), a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). And in order to determine how a suspect would have "gauge[d]" his "freedom of movement," courts must examine "all of the circumstances surrounding the interrogation." *Stansbury, supra*, at 322, 325, 114 S.Ct. 1526 (internal quotation marks omitted). Relevant factors include the location of the questioning, *see Shatzer, supra*, at —— – ——, 130 S.Ct., at 1223–1226, its duration, *see Berkemer v. McCarty,* 468 U.S. 420, 437–438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), statements made during the interview, *see Mathiason, supra*, at 495, 97 S.Ct. 711; *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004); *Stansbury, supra*, at 325, 114 S.Ct. 1526, the presence or absence of physical restraints during the questioning, see *New York v. Quarles*, 467 U.S. 649, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), and the release of the interviewee at the end of the questioning, *see California v. Beheler,* 463 U.S. 1121, 1122–1123, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (*per curiam*).

Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of *Miranda.* We have "decline[d] to accord talismanic power" to the freedom-of-movement inquiry, *Berkemer, supra*, at 437, 104 S.Ct. 3138, and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda.* "Our cases make clear ... that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." *Shatzer,* 559 U.S., at ——, 130 S.Ct. at 1224.

*Howes v. Fields*, 565 U.S. 499, 508–09, 132 S.Ct. 1181, 1189, 182 L.Ed.2d 17 (2012). However, the test involves no consideration of the particular suspect's "actual mindset." *Yarborough v. California*, 541 U.S. 652, 667, 124 S.Ct. 2140, 158 L.Ed.2d 938(1994). *Accord, State v. Mason*, 82 Ohio St.3d 144, 153, 1998-Ohio-370, 694 N.E.2d 932(1998); *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995 Ohio 24, 653 N.E.2d 253(1995).

{¶22} The United States Supreme Court has recognized custodial interrogation is not limited to a police stationhouse interrogation. *See, Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 38191968) (questioning of defendant by an agent from the Internal Revenue Service while defendant was incarcerated); and *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311(1969) (questioning of defendant, by the police, in defendant's bedroom). Also, Fifth Amendment protection is not limited to any single source of official interrogation. Where a defendant is subject to the inherently compelling

pressures of a custodial situation, he is entitled to warning before any official interrogation. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359(1981) (statements made to court-appointed psychiatrist).

{¶23} On the other hand, police are not required to administer *Miranda* warnings to everyone whom they question. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977). "Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." Id. *Accord, State v. Biros,* 78 Ohio St.3d 426, 440, 1997-Ohio-204, 678 N.E.2d 891. "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda*, 384 U.S. at 477, 86 S.Ct. 1602, 16 L.Ed.2d 694. *Accord, State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶27.

### *Interrogation requiring Miranda Warnings.*

{¶24} In *Rhode Island v. Innis*, the United States Supreme Court defined "interrogation,"

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition

focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

446 U.S. 291, 300-302, 100 S.Ct. 1682, 64 L.Ed.2d 297(1980 (footnotes omitted). The Court further noted, "[a]ny knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 302, 100 S.Ct. 1682, 64 L.Ed.2d 297, n.8.

**{¶25}** On the other hand, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Moreover, there is no requirement that officers interrupt a suspect in the course of making a volunteered statement to recite the *Miranda* warnings. *State v. Tucker,* 81 Ohio St.3d 431, 438, 1998-Ohio-438, 692 N.E.2d 171. In the context of obtaining a voluntary consent to search, the United States

Supreme Court observed, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247(1984); *United States v. Drayton*, 536 U.S. 194, 205, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). Therefore, it can be assumed that no Fifth Amendment violation occurs when the police ask an individual to speak with them without expressly informing the citizen of his or her right to say no.

### *Jacks was not in custody for Miranda purposes*

**{¶26}** At the time of his arrival, Sergeant Kanavel was investigating a report of a domestic disturbance. Sergeant Kanavel and Deputy Finley questioned the parties in separate locations in an effort to determine what had transpired between the parties. Jacks was not handcuffed and was interviewed on the front porch of the residence, a public place. Jacks admits that he was able to retrieve his cigarettes and to smoke during his time with Sergeant Kanavel. Jacks never attempted to leave, nor did he ever express his desire not to speak with the police to Sergeant Kanavel.

**{¶27}** Simply requesting an individual to remain at his home while the officers gather information concerning the report of a domestic dispute lacks the inherently coercive pressures of interviews occurring in the confines of a police station. Keeping the parties separated while investigating allegations of a domestic disturbance is a matter of safety of the parties and the officers rather than a restriction on the freedom of movement associated with an arrest. The record reveals that Jacks was not subjected to the inherently compelling pressures of a custodial situation.

{¶28} We find that a reasonable person in Jacks' position during the interview would have understood that, while he could not be in the same room as his girlfriend, Jacks was free to move about, walk away, or decline to answer the questions by the officers. *State v. Mason*, 82 Ohio St.3d 144, 153-154, 694 N.E.2d 932, 1998-Ohio-370. There were no restraints on his freedom of movement to the degree associated with a formal arrest.

{¶29} Because Jacks was not in custody, he was not entitled to *Miranda* warnings. Therefore, the trial court's analogy of the questioning in this case to a roadside stop is inconsequential, and error, if any, is harmless beyond a reasonable doubt.

{¶30} The trial court properly denied Jacks' motion to suppress.

{¶31} Jacks' Assignment of Error is overruled.

{¶32} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur