Zayas, J., dissenting.
{¶ 39} I concur with the majority's conclusion that Walker's waiver of his Miranda rights was voluntary. However, *335 based on this record, the evidence overwhelmingly demonstrates that Walker did not have the intellectual capacity to understand or appreciate the significance of his Miranda rights, and the trial court arbitrarily ignored the experts' testimony. I therefore respectfully dissent.
The Expert Reports
{¶ 40} The trial court appointed two Court Clinic Forensic Services experts to evaluate Walker. Dr. Dreyer was appointed at the request of the defense, and Dr. Hellmann was appointed at the request of the state. The state stipulated to the experts' qualifications.
{¶ 41} Dreyer described Walker as an immature, simplistic person who is often very childlike. Hellmann stated that he appears to have microcephaly, and his cognitive disorder has caused communication deficits, limited vocabulary, and an inability to understand abstract ideas.
{¶ 42} Walker has a history of learning disabilities, special education classes, participation in Individualized Education Programs, and difficulty reading. He has long been involved with mental-health services at The Children's Home, Altercrest, St. Joseph's Orphanage, Mental Health Access Point, Summit Behavioral Healthcare ("SBH"), and Cincinnati Children's Hospital Medical Center. His numerous diagnoses include psychosis, major-depressive disorder, disruptive-behavior disorder, mild or moderate mental retardation, mixed-expressive-receptive-language disorder, oppositional-defiant disorder, impulse-control disorder, attention-deficit/hyperactivity disorder, and kleptomania. He is also a victim of child sexual abuse.
{¶ 43} In addition to her evaluation of Walker's ability to understand his Miranda rights, Dreyer had evaluated Walker several times in the past four years, administering various tests to gauge his intellectual and cognitive abilities. In previous evaluations, Walker completed the "Test of Memory Malingering" to determine if he were feigning or exaggerating his memory problems. In that evaluation, Walker's score was consistent with individuals with brain injuries, aphasias, dementia, and other types of cognitive impairments, and inconsistent with an individual who was feigning or exaggerating his memory deficits.
{¶ 44} Under the Weschler Adult Intelligence Scale, Walker's full scale IQ was 59, placing him in the first percentile. He scored in the first percentile for verbal comprehension, the second percentile for perceptual reasoning, the first percentile for working memory, and the first percentile for processing speed. The scores indicated that his verbal reasoning, perceptual reasoning, and ability to use information, concentrate, and process information are in the extremely low range.
{¶ 45} Dreyer also administered the "Wide Range Achievement Test" to assess his academic abilities. Walker's score on the word reading subtest was below the first percentile, as was his score on the sentence comprehension subtest and his reading composite score. He scored in the fourth percentile for spelling and the second percentile for math.
{¶ 46} Both experts administered the "Miranda Rights Comprehension Testing," ("MCRI") to determine Walker's capacity to understand and waive his rights. The MCRI is a set of four instruments designed to assist in the determination of a defendant's capacity to understand and appreciate the significance of his or her Miranda rights. Both experts noted that the MCRI tests are objective, standardized tests with no subjective component to their scoring.
{¶ 47} The "Comprehension of Miranda Rights-II" assesses an examinee's understanding *336 of the basic meaning of each of the five Miranda warnings. Each warning is presented individually, and examinees are asked to explain the meaning of each warning in their own words. Walker scored 2 out of 10 both times he was tested, which is just below the third percentile and indicates significant deficits in understanding Miranda rights.
{¶ 48} The "Comprehension of Miranda Rights-Recognition-II" assesses an examinee's Miranda understanding, omitting the role of verbal expressive abilities in the assessment. Each warning is presented, and after each, the examinee is read other statements and must recognize whether each statement has the same meaning as the Miranda warning. When Dreyer tested Walker, he answered 10 out of 15 correctly, which is just below the fifth percentile, indicating an impaired ability to understand the warnings. He scored 8 out of 15 when Hellmann tested him.
{¶ 49} The "Function of Rights in Interrogation" test is a structured interview with visual stimuli, designed to assess an examinee's understanding of the nature of interrogation, the significance of the right to counsel, and the significance of the right to silence. Examinees are presented with illustrations accompanied by a brief scenario and related questions. When Dreyer administered the test, Walker's overall score was 14 out of 30, which is at the first percentile, indicating a significant impairment in the ability to understand his rights. Walker's score on the nature of interrogation was an 8 of 10, just below the twenty-second percentile, indicating a general understanding of interrogation. However, on the right to counsel subscale, Walker scored 4 out of 10, in the first percentile, indicating deficits in his understanding of the function of legal counsel. On the right to silence subscale, which tests an individual's understanding of the protections of the warning and the role of a confession, Walker scored 2 out of 10, at the second percentile. When Hellmann tested him, Walker's overall score was 19 out of 30, which is in the fifth percentile. Again, Walker scored better on the nature of interrogation subpart, but performed poorly regarding the function of legal counsel, the protections related to the right to remain silent, and the role of confessions.
{¶ 50} Finally, Walker completed the "Comprehension of Miranda Vocabulary-II," designed to measure his understanding of the vocabulary associated with Miranda rights. When Dreyer tested him, Walker obtained a score of 5 out of 32, which is at the second percentile, indicating significant difficulties understanding basic Miranda terms. When Hellmann tested him, he scored 14 out of 32, which is in the fifth percentile.
{¶ 51} Both reports discussed Walker's tendency to acquiesce to the police during the interrogation. As Hellmann's report summarized:
The defendant had a tendency to acquiesce to detectives during the questioning, resulting in him providing many confusing and conflicting statements. His friendly bantering and chuckling during portions of the interview suggest that he was not cognizant of the adversarial nature of the roles of the detectives during questioning, and was not adequately concerned with the perils and consequences of disclosure during the interview. * * * Rather, he seemed to have been more concerned with making sure he did not miss lunch.
{¶ 52} Dreyer reached a similar conclusion:
A review of the defendant's interrogation with police suggests that the defendant *337 may have been trying to be compliant with police.
* * *
[The] pattern of acquiescence [in intellectually disabled individuals] * * * may lead to problems in a police interrogation. Specifically, it often leads to defendants responding affirmatively to questions, regardless of their context or nature, as a means to avoid conflict with authority.
It is noted that [Walker] appears to have lacked the appropriate understanding and appreciation of his Miranda rights at the time of his interrogation. Further, his personality characteristics, coupled with his intellectual limitations, appear to have interacted with the police interrogation efforts and contributed to his confession.
{¶ 53} Both experts agreed to a reasonable degree of psychological certainty that Walker did not have the intellectual capacity to waive his Miranda rights because he lacked the ability to understand his rights and to appreciate the consequences of waiving those rights. Dreyer further opined that Walker had little understanding of the negative consequences of speaking with the police and believed police officers were there to help him if he provided them information.
Walker's Interrogation
{¶ 54} In addition to extensively testing Walker, both experts reviewed and considered the audio of the interrogation. Two detectives interviewed Walker: Detective Iris Kelly, who administered the warnings, and Detective Kimberly Kelley. Kelly did not testify at the hearing on the motion to suppress, but Kelley did.
{¶ 55} After Kelly read Walker the Miranda warnings, she asked Walker to explain what they meant. He responded, "I don't know." Then Kelly gave Walker the following additional explanation: "That means that you can talk to us without a lawyer, or you can talk to us with a lawyer. Okay? That means that if you want, if you want to stop talking to us, you can stop at any time. Okay? Do you understand that?" Walker stated, "Yes ma'am," and then signed the acknowledgement form.
The Expert Testimony
{¶ 56} Both experts unequivocally testified that Walker did not have the intellectual capacity to understand his rights or appreciate the consequences of waiving his rights. Through rigorous cross-examination, the state attempted to undermine the experts' opinions. The state tried to show a discrepancy between the opinion that Walker was competent to stand trial one month prior to the interrogation and the opinion that he was not competent to understand the Miranda warnings four months after the interrogation. However, both experts repeatedly testified that competency to stand trial is distinct from competency to understand Miranda rights, and that one can be competent to stand trial without being competent to understand and waive Miranda rights, and Dreyer testified that the timing of the evaluations was not an issue. Dreyer also explained that the length of time between the interrogation and the Miranda testing was not relevant, because Walker's cognitive functioning and mental retardation were unlikely to change over time. There is no evidence to contradict the experts' opinions on this matter.
{¶ 57} The prosecutor specifically discussed Walker's ability to understand the courtroom proceedings, the roles of the judge, prosecutor, and defense counsel, the charges, and the available pleas, and suggested those factors undermined the experts' conclusions. However, both experts repeatedly testified that the determination of competency to stand trial assesses different *338 criteria than the ability to understand Miranda warnings, and Dreyer reiterated that Walker's competency to stand trial had no effect on "the fact that he didn't understand fundamental rights because he doesn't understand the rights related to the interrogation or the Miranda warnings."
{¶ 58} In response to the prosecutor's suggestion that Walker's ability to correct the officers and not simply endorse the officer's statements were relevant factors, Dreyer again testified they were not relevant to the Miranda inquiry. The only relevant issue was whether Walker had the capacity to understand his rights and the consequences of waiving those rights, and Walker did not.
{¶ 59} Additionally, both experts noted in their reports and in their testimony that, while the officers behaved appropriately during the interrogation, Walker's behavior indicated a willingness to acquiesce to the officers and a failure to understand the gravity of the circumstances. The state did not introduce any evidence to contradict their conclusions.
The Layperson Testimony
{¶ 60} The sole witness for the state was Detective Kelley, who participated in the interrogation and was present when Kelly read Walker his rights. Kelley acknowledged that she was aware that Walker had been designated possibly mildly mentally retarded, and that both detectives were on notice that Walker was slow and previously had been found incompetent to stand trial.
{¶ 61} Kelley testified that she did not know whether Kelly had previously interrogated Walker, but that she had Mirandized and interrogated Walker in 2013. However, Kelley did not testify that Walker had waived his rights or signed a written waiver before making those statements. And, in the 2013 case, Walker was found incompetent to stand trial several times and went through a lengthy restoration period. It is unclear from the record whether Kelley interrogated him before or after he was found competent to stand trial. Equally important, Walker did not challenge whether his Miranda waiver was knowing and intelligent in that case.
{¶ 62} Kelley also stated that she was familiar with Walker's criminal history. The state introduced the records of Walker's adult criminal history, and she confirmed his history. However, the state elicited no testimony from her regarding his prior criminal history.
{¶ 63} Finally, Kelley initially testified that she "tried to use simple language" when speaking to Walker, but later conceded that she used the same words with Walker that she would use with anyone else. Kelley also testified that it appeared to her that Walker understood his rights and their questions during the interrogation. However, Dreyer specifically testified that she did not agree with Kelley's opinion. And both experts concluded, after objective testing, that Walker did not understand his Miranda warnings. The state did not offer any evidence to refute Dreyer's expert opinion or the experts' objective test results. Additionally, the state did not introduce any evidence to support Kelley's subjective, lay opinion.
Standard of Review
{¶ 64} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. An appellate court accepts the trial court's findings of fact if they are supported by competent and credible evidence, but must review de novo the application of the relevant law to those facts. Id.
*339 The Trial Court Impermissibly Ignored the Expert Testimony
{¶ 65} The majority states that expert testimony may be disregarded "if there are 'some reasons * * * objectively present' in the record to do so." Brown , 5 Ohio St.3d 133 at 135, 449 N.E.2d 449 ; White , 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, at ¶ 71. However, the question is whether the objective reasons are grounded in the evidence and sufficient to undermine and discredit the testimony of the qualified experts. See White at ¶ 70. The trial court may not disregard credible and uncontradicted expert opinions in favor of the perceptions of lay persons or the court's own expectations. Id. at ¶ 74. Other courts have concluded that
[i]n assessing the factfinder's decision to disregard the experts' opinion, a reviewing court should consider:
(1) the correctness or adequacy of the factual assumptions on which the expert opinion is based;
(2) possible bias in the expert's appraisal of the defendant's condition;
(3) inconsistencies in the expert's testimony, or material variations between experts; and
(4) the relevance and strength of the contrary lay witness testimony.
(Footnotes omitted.) Strickland v. Francis , 738 F.2d 1542, 1552 (11th Cir.1984), citing Brock v. United States , 387 F.2d 254, 257-258, (5th Cir.1967), quoting Mims v. United States , 375 F.2d 135, 143 (5th Cir.1967) (Footnotes omitted.) See White at ¶ 85 (holding that the trial court abused its discretion "by rejecting well-supported expert opinion [ ] without any evidence to the contrary").
1. The correctness and adequacy of the facts upon which the doctors relied
{¶ 66} Both experts examined and tested Walker extensively and reviewed his past history, including his previous criminal history. Both concluded, to a reasonable degree of medical certainty, that Walker was mildly mentally retarded and did not have the intellectual capacity to knowingly understand or waive his Miranda rights. Both doctors administered the MCRI, an objective, standardized test, to conclude that Walker lacked the ability to understand or appreciate the Miranda warnings. Notably, their conclusions were based on objective testing and not based on Walker's subjective statements or descriptions of his mental capacity.
{¶ 67} Both experts also reviewed the audiotape of the interrogation and noted that after Kelly read him all of his rights, Walker was asked to explain the meaning of his rights. When Walker responded that he did not know, Kelly gave an additional explanation that was very limited. Walker was only informed of his right to have an attorney present while speaking to the officers, and his right to stop talking to them whenever he wanted. This explanation did not inform him of his right to remain silent-that is, to not talk at all-nor did it include two other required components of the Miranda warnings: (1) that anything he said could be used against him; and (2) that a lawyer would be appointed if he could not afford one. Dreyer concluded that this exchange was too limited to establish that Walker understood the information Kelly had read to him.
{¶ 68} The state presented no reason to disregard the testimony of the experts which was based on objective testing and Walker's well-documented history and deficiencies. The state presented no evidence that the reports lacked an adequate factual basis or that the doctors made inaccurate assumptions. Therefore, this factor weighs against the trial court's decision to disregard the experts' opinions.
*340 2. Possible bias in the experts' appraisals
{¶ 69} Both experts were appointed by the trial court and were employees of the Court Clinic Forensic Services. As Court Clinic employees, their psychiatric examinations were ordered by the court specifically to assist the court in making a proper determination. Both experts were qualified and competent to render professional opinions, and nothing in the record suggests any bias. The state stipulated that both experts were qualified, and the trial court did not make any findings challenging the experts' qualifications or competency. This factor also weighs against the court's decision to ignore the experts' findings and conclusions.
3. Inconsistencies in the expert's testimony, or material variations between experts
{¶ 70} The only expert testimony in this case was by the two appointed experts who agreed to a reasonable degree of medical certainty that Walker was intellectually incapable of understanding his Miranda rights. Both submitted detailed reports supporting their conclusions, discussed their findings and conclusions, and unequivocally testified that Walker was not capable of a making knowing and intelligent waiver of his Miranda rights.
{¶ 71} As previously noted, the state unsuccessfully attempted to suggest inconsistencies through cross-examination. However, both experts remained confident in their opinions and conclusions, and the state did not reveal any inconsistencies within the reports or between the experts.
{¶ 72} The state presented no conflicting testimony to undermine the experts' opinions. This is not a case where the trial court heard dueling experts dispute the findings of Dreyer and Hellmann or contradict their conclusions that Walker's intellectual limitations prevented him from understanding the Miranda rights and the consequences of waiving his Miranda rights. The only expert testimony presented concluded that Walker was intellectually incapable of knowingly and intelligently waiving his Miranda rights. This factor also does not support the trial court's disregard of the experts' opinions.
4. Relevance and strength of the contrary lay witness testimony
{¶ 73} Kelley's testimony was insufficient to undermine the experts' uncontroverted opinions that Walker did not knowingly or intelligently waive his Miranda rights. Most of her testimony was a recitation of the historical facts based on the interrogation and her knowledge of Walker, and was irrelevant to whether Walker knowingly waived his rights. Although she testified that she believed Walker understood his rights and all of the questions he was asked during the interrogation, her subjective opinion was refuted by Dreyer's expert testimony, the experts' objective testing, and the experts' opinions based on the audiotape of the interrogation.
This Record Contains no Reason to Disregard the Experts' Opinions
{¶ 74} This record is devoid of any objective reasons to support the trial court's decision to disregard the experts' reports and testimony. The record lacks any testimony that would allow the court to disregard the experts' opinions, and none of the factors that would justify ignoring the experts are present. The experts' reports and testimony were not challenged or contradicted by the state or the court.
{¶ 75} The trial court gave no explanation as to how the court evaluated the experts' opinions or why those opinions were completely disregarded. The court *341 made no findings that the experts lacked credentials or credibility. The judge's failure to make any reference to the reports or any findings based on objective evidence to disregard the experts' opinions, suggests the court substituted its own subjective judgment in making its determination. Therefore, the trial court's decision to ignore the expert opinions of two court-appointed experts and their objective test results and substitute its own judgment was arbitrary and not supported by any objective evidence in the record. See White , 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, at ¶ 74.
The Trial Court Findings were not Supported by the Record
{¶ 76} Several of the trial court's findings of fact are not supported by any evidence. The trial court stated that Walker was "cunning enough to minimize his criminal record," but there is no objective evidence in the record to support this finding of fact. Objective testing demonstrated that Walker had memory issues consistent with cognitive impairments, and inconsistent with deliberate malingering. Both experts agreed that Walker was a poor historian. Neither indicated that his minimization of his criminal history was deliberate, and there was absolutely no evidence in the record indicating that Walker was "cunning." In fact, a review of the interrogation and expert reports gives the opposite impression.
{¶ 77} Furthermore, while the trial court noted that Walker "remembers that the police told him he did not have to sign the Miranda waiver," a review of the interview reveals that the officers never told him that he did not have to sign the waiver. Walker's false memory further supports the experts' opinion that Walker is a poor historian who was not deliberately minimizing his criminal record.
{¶ 78} The trial court also stated that Walker was "not medicated" and only using "sleep medication." However, the record demonstrates that Walker told the officers he was taking Risperdal, an antipsychotic, and Dr. Hellmann's report confirmed this.
{¶ 79} While the trial court correctly noted that Walker had been deemed ineligible for Developmental Disabilities Services ("DDS") years earlier, the state presented no evidence, and the court made no finding, regarding the relevance of that fact. The record contains no evidence that the denial of services years earlier affected Walker's ability to understand his Miranda rights in 2014. And Dreyer testified that Walker's ineligibility was based on old assessments made when Walker was much younger, and that DDS had repeatedly refused to reassess him. Moreover, Dr. Dreyer disagreed with DDS's assessment after looking at their testing, and both experts concluded Walker was incapable of understanding his rights despite the DDS ineligibility.
{¶ 80} Many of the trial court's findings were discounted by the experts or were not relevant to the question of whether the waiver was knowing and intelligent. The trial court found that Walker was able to tell the doctors mostly accurate information about the police interrogation, yet both experts explained that Walker's limited memory of the interrogation was inconsequential to his ability to understand the Miranda warnings. The trial court found that the officers were gentle during the interrogation, yet Dreyer testified that the gentleness of the officers had no impact on the fact that Walker did not understand his fundamental rights.
{¶ 81} The trial court's belief that the competency findings supported a conclusion that Walker knowingly and intelligently waived his Miranda rights was repudiated *342 by both experts numerous times. Absent any evidence by the state to contradict the experts, the trial court's finding was not supported by the record. The court was also persuaded by the fact that the competency report was completed one month before the interrogation and the Miranda competency evaluations were done four months after the interrogation. Again, both experts testified that the timing of the Miranda evaluation was irrelevant to their conclusions that Walker did not have the intellectual capacity to understand his rights. Thus, the trial court's findings on these issues do not comport with the evidence in the record, and improperly discounted the experts' opinions.
{¶ 82} The trial court found that Walker had an extensive criminal history. Walker had been charged with at least 28 juvenile offenses, had been adjudicated delinquent in nine cases, found to be unruly in one case, and had been found incompetent to stand trial in several cases. Of the nine adjudications, Walker did not raise the issue of incompetence in any of those cases, admitted to eight of the charges, and was represented by counsel in one of those cases. The criminal history is accurate, but it is unclear how that fact pertains to Walker's intellectual capacity to waive his Miranda rights.
{¶ 83} The state presented no testimony tying Walker's prior criminal history to his ability to understand his rights, and the trial court made no finding as to why his prior criminal history supported its conclusion that the waiver was knowing and intelligent. Regardless, both experts were aware of Walker's prior criminal history and still concluded to a reasonable degree of psychological certainty that he did not have the intellectual capacity to knowingly and intelligently waive his Miranda rights.
Waiver of Miranda Rights
{¶ 84} To determine whether a suspect knowingly, intelligently, and voluntarily waived his Miranda rights, courts examine the totality of the circumstances. State v. Clark, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). The waiver inquiry has two dimensions: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Edwards v. Arizona , 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Id.
{¶ 85} In this case, the record supports the trial court's conclusion that Walker's waiver was voluntary. The interview was not lengthy, and the police officers did not intimidate, coerce, or deceive Walker. Thus, the sole issue is whether Walker had the intellectual capacity to knowingly and intelligently waive his Miranda rights.
{¶ 86} A suspect's waiver of his or her Miranda rights "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine , 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ; State v. Adams , 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 44. If a suspect acts "in such a way as to reasonably alert the interrogating officer that the warnings given have been misapprehended, the officer must, before any further questioning, insure that the suspect fully understands his constitutional privilege against self-incrimination * * *." State v. Jones , 37 Ohio St.2d 21, 306 N.E.2d 409 (1974), syllabus.
{¶ 87} To intelligently and knowingly waive Miranda rights, one must, at the very least, understand the words used in *343 the warnings, what the rights encompass, and the consequences of waiving those rights. State v. Lynn , 7th Dist. Belmont No. 11 BE 18, 2011-Ohio-6404, 2011 WL 6210735, ¶ 22. "An individual's low intellect does not necessarily render him or her incapable of waiving Miranda rights." Id. at ¶ 14, citing State v. Jenkins , 15 Ohio St.3d 164, 233, 473 N.E.2d 264 (1984).
{¶ 88} The state bears "a heavy burden" to demonstrate by a preponderance of the evidence that the accused "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to the police. State v. Barker , 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 23, quoting Miranda , 384 U.S. at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694. There can be no presumption that the defendant understood the rights, nor can the burden be placed on the defendant to show a lack of capacity. Tague v. Louisiana , 444 U.S. 469, 469-471, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980) (per curiam).
Walker Did Not Receive a Complete Miranda Warning
{¶ 89} The record establishes that Walker was not provided a full explanation of his rights. When a suspect indicates that he or she does not understand, as Walker did, the officer must "insure that the suspect fully understands his constitutional privilege against self-incrimination." Jones , 37 Ohio St.2d 21, 306 N.E.2d 409, at syllabus. As both experts noted, the detective provided an incomplete explanation of the Miranda rights after Walker indicated he did not understand his rights.
{¶ 90} A condition precedent to waiving one's Miranda rights is that all of the Miranda warnings were provided. See Miranda , 384 U.S. at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (explaining that "[a]fter such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."); State v. Williams , 38 Ohio App.2d 67, 69, 313 N.E.2d 17 (1st Dist.1973) (concluding that the "failure to give the required constitutional warnings results in a per se inadmissibility of inculpatory statements made in response to custodial interrogation, regardless of the fact that the statement may be truly voluntary").
{¶ 91} Even where a subset of the Miranda warnings are properly provided, the remainder cannot be inferred due to other factors, such as the prior experience or prior criminal history of the defendant, as this would completely undermine the purpose and intent of the Miranda warnings. United States v. Street , 472 F.3d 1298 (11th Cir.2006) (holding that statements the defendant made to police after receiving incomplete oral Miranda warnings should have been suppressed, and that the trial court was wrong to imply that defendant's 20 years of experience as a police officer would mean he was not entitled to fully adequate warnings); United States v. Bland , 908 F.2d 471, 474, (9th Cir.1990), fn. 1 ("We likewise reject the government's suggestion that because Bland had prior experience with the criminal system, he knew of his rights and did not have to be given a complete warning.").
{¶ 92} Without a complete explanation of all of his rights, Walker could not have fully understood the consequences of abandoning his rights. While the majority is correct that Walker did not raise this issue below, the adequacy of the Miranda warnings was a factor that both experts considered in determining that Walker's waiver was not knowing and intelligent. Moreover, *344 the determination of whether a waiver is knowing and intelligent is "made upon an inquiry into the totality of the circumstances surrounding the interrogation," including the suspect's "age, experience, education, background, and intelligence" as well as "capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Thus, the adequacy of the warnings given to Walker is a factor to be considered in determining whether the waiver was knowing and intelligent.
The Motion to Suppress was Improperly Denied
{¶ 93} In this case, the trial court erred when it arbitrarily discounted the experts' uncontroverted testimony that Walker did not have the intellectual capacity to knowingly or intelligently waive his rights. The trial court failed to set forth any basis supported by the evidence to reject the uncontroverted testimony of two qualified experts.
{¶ 94} The majority determined that the trial court was justified in rejecting the expert opinions because Walker was competent to stand trial, understood the courtroom proceedings, and could participate in his own defense. However, Dreyer was specifically asked about those factors and repeatedly testified that those factors were not relevant to Walker's intellectual capacity to understand his Miranda rights. Dreyer's testimony, which was supported by Hellmann's testimony, was unrefuted. Therefore, the trial court's reliance on these irrelevant factors was arbitrary, especially in light of the objective testing conducted by the experts.
{¶ 95} The majority also concludes that Walker's ability to knowingly and intelligently participate in the competency evaluations is "very similar" to the ability to knowingly and intelligently waive Miranda rights. However, the trial court did not make that finding, and the record does not support that finding.
{¶ 96} Dreyer stated that Walker appeared to have an "adequate understanding" of the information primarily because he had been given the same information multiple times. Moreover, Hellmann, who evaluated Walker a scant ten days after Dreyer, reported that she paraphrased the same information for Walker using simple language to maximize his understanding. Despite her efforts, he was unable to accurately summarize the information. She did not believe he understood her explanations, and ultimately, Walker did not sign the document because he did not understand it. Notably, the state presented no evidence to support a finding that the ability to participate in a competency-to-stand-trial evaluation is similar to the intellectual capacity to understand the Miranda rights. And neither expert testified that Walker's acknowledgement of the explanation of the court clinic rights and procedures was in any way related to his ability to understand his Miranda rights.
{¶ 97} The experts' testimony, objective testing, and comprehensive reports demonstrate that Walker's waiver was not knowing or intelligent. The limited explanation of the Miranda rights compounded Walker's inability to understand his rights. Both experts concluded, after objective testing, that Walker's numerous cognitive deficits prevented him from understanding the language of the Miranda warnings and the consequences of waiving his rights, especially his right to remain silent and his right to counsel. Dr. Dreyer testified that research has shown that the right to remain silent is the most complicated concept for intellectually-disabled individuals to understand, and this testimony was uncontroverted. Both experts also agreed *345 that Walker was likely acquiescing to the officer's statements, and that he lacked a full appreciation of the adversarial nature of the interrogation.
{¶ 98} Accordingly, I would hold that the trial court's determination that Walker's waiver was knowing and intelligent is not supported by competent, credible evidence, and therefore Walker's motion to suppress should have been granted. Based on the totality of circumstances, Walker did not have the intellectual capacity to understand the Miranda rights or appreciate the significance of waiving those rights. I therefore respectfully dissent.
Conclusion
{¶ 99} Because Walker's waiver was not knowing or intelligent, I would sustain the first assignment of error, vacate the conviction, and remand the cause for further proceedings. I would find the remaining assignments of error to be moot.