[Cite as *In re B.D.*, 2020-Ohio-361.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In Re: | : | |
| | | No. 18AP-993 |
| B.D., | : | (C.P.C. No. 17JU-13389) |
| Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on February 4, 2020

**On brief:** *Victoria E. Ullmann*, for appellant. **Argued:** *Victoria E. Ullmann.*

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for the State of Ohio. **Argued:** *Kimberly M. Bond.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BRUNNER, J.

{¶ 1} Appellant-minor, B.D., appeals from a judgment entered on December 3, 2018, adjudging him to be a delinquent minor for having committed the offense of burglary in violation of R.C. 2911.12(A)(2), and placing him on probation. Specifically, B.D. challenges the trial court's decision to admit his confession into evidence at trial and the ensuing conviction based on the confession. Because B.D.'s counsel conceded that the interview involving the confession was non-custodial, we do not find B.D.'s confession resulted from a violation of *Miranda*[1] or that it was otherwise involuntary. Because B.D.'s counsel failed to raise argument about the element of the offense regarding whether a person was "present or likely to be present" in the house, we cannot address that issue, and B.D.'s confession was otherwise sufficient evidence of B.D.'s guilt. R.C. 2911.12(A)(2). Finally, we find any error in allowing the State of Ohio to reference cases in oral argument

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

that it did not cite in written briefing to have been harmless.  We overrule each of B.D.'s assignments of error and affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   On November 2, 2017, B.D. was awakened in his home by his grandmother (who had temporary custody of him) and two police detectives.[2]  (Tr. at 11-12, 14, 37, filed Aug. 9, 2018.)  It is apparently undisputed that B.D. was on probation.  (Tr. at 28.)  After introducing themselves, the lead detective, Mark Ryan, told B.D. to sit down.  (Tr. at 18; State's Ex. G at 2:41-53.)  Ryan said that a suspect in a burglary, A.W., had confessed and also implicated B.D. in the burglary.  (Tr. at 18; State's Ex. G at 2:50-3:25.)  The detective represented that he had the "whole ball of wax," including fingerprints, and explained that it was not an "if" situation, it was more of a "why you did it" situation; in essence he was just there to "verify" with B.D. what had happened.  (Tr. at 18-19; State's Ex. G at 2:50-4:22.)  Ryan assured B.D. that he was not under arrest and would not be handcuffed.  (Tr. at 18; State's Ex. G at 3:25-33.)  After repeatedly indicating that the conversation between them should only take five minutes, he amended that such an estimate was dependent on B.D.'s cooperation, "as long as you talk is the long it's gonna take."  (Tr. at 19; State's Ex. G at 4:20-4:26.)

{¶ 3}   At this juncture, B.D.'s grandmother interrupted to cut off B.D.'s nascent denials and remonstrated B.D. that he better tell the truth because he could be sent to jail for telling lies.  (Tr. at 19-20; State's Ex. G at 4:25-40.)  Ryan then asked B.D. what B.D. would say if he had B.D.'s fingerprints in the burglarized house.  (Tr. at 20; State's Ex. G at 4:35-50.)  B.D. responded that that would be a different story, but again denied having gone into the house.  (Tr. at 20; State's Ex. G at 4:35-50.)  At this point, the detective represented to B.D. that he had prints of both B.D. and A.W.; whereupon B.D.'s grandmother piped up again, scolding B.D. that "this [wa]s no game.  No game.  * * *  No game whatsoever.  Tell the truth."  (Tr. at 20; State's Ex. G at 4:50-5:10.)  Ryan again assured B.D. this was not an "if" situation in which there was some doubt about his guilt.  (Tr. at 21; State's Ex. G at 5:05-25.)   The detective hypothesized that B.D. knew that the neighbor who owned the

---

[2] The detectives testified that they thought they remembered that the grandmother did the awakening but B.D.'s grandmother testified that the police detectives woke up B.D.  *Compare* Tr. at 14, 63 *with* Tr. at 37.

burglarized house was out of town, and that B.D., his girlfriend, and A.W., had gone into the house together.  (Tr. at 21; State's Ex. G at 5:05-25.)

{¶ 4}   The detective then offered B.D. some advice—that he should "cooperate" and "go in this thing with a smiley face," like A.W.  (Tr. at 21; State's Ex. G at 5:23-30.)  Ryan said he typed (impliedly in a report) that A.W. had cooperated in the investigation, was getting on with his life, was getting better, and went to drug treatment.  (Tr. at 21; State's Ex. G at 5:30-37.)  He then represented to B.D. that A.W. had come clean and, as a result, the detective had "walked away."  (Tr. at 21; State's Ex. G at 5:40-45 ("[H]e came clean and, you know what, I walked away.").)  He again represented that he had "all this evidence." (Tr. at 21; State's Ex. G. at 5:45-50.)  The only difference between B.D. and A.W., opined Ryan, was that A.W. had made the decision to come clean and suggested B.D. should "go into this the same way" because the "whole idea here is not to lock you up and throw away the key, just gotta make sure you don't do it again."  (Tr. at 21-22; State's Ex. G at 5:38-6:00.)  At this point, when Ryan again asked if B.D. had gone into the burglarized house and taken change (coins), B.D. admitted that he had.  (Tr. at 22; State's Ex. G at 6:02-10.)  At no time was B.D. read the *Miranda* warnings to inform him of his right to remain silent and have an attorney present during questioning.

{¶ 5}   The next day, on November 3, 2017, Ryan filed a complaint and affidavit of probable cause leveling a charge of burglary against B.D.  (Nov. 3, 2017 Compl.; Nov. 3, 2017 Ryan Aff.)  The only evidence included in the affidavit that implicated B.D. was his confession and the only prints mentioned belonged to A.W.  (Nov. 3, 2017 Ryan Aff.)

{¶ 6}   On May 13, 2018, the defense filed a motion to suppress challenging the voluntariness of the statement and the validity of B.D.'s waiver of the Fifth Amendment privilege against self-incrimination.  (May 13, 2018 Mot. to Suppress.)  The State opposed the motion.  (May 17, 2018 Memo. in Opp.)  On May 30, a magistrate of the trial court held a combination motion hearing and trial.

{¶ 7}   At the motion hearing phase of proceedings, Ryan and B.D.'s grandmother testified to the facts surrounding the interview as we have recounted them above and a recording of the interview was played and transcribed.  (Tr. at 10-38.)  Following oral argument by both sides, the magistrate indicated that the court would decline to suppress B.D.'s confession.  (Tr. at 38-43.)

{¶ 8} For the trial phase of the hearing, to avoid repetition, the parties agreed to incorporate the testimony that had been introduced during the suppression phase of the hearing. (Tr. at 44.) The parties presented further testimony from Ryan and B.D.'s grandmother; the owner of the burglarized house took the stand; the other detective who was present during the interview testified, and so did a Columbus police evidence technician. Most of the testimony can be summarized briefly.

{¶ 9} The evidence technician testified that she collected photographs and fingerprints from the scene. (Tr. at 67-68, 71.)

{¶ 10} The detective (other than Ryan) who was present for the interview of B.D. testified that he said nothing during the interview, that it was conducted in B.D.'s grandmother's kitchen, and that it was B.D.'s grandmother who actually awakened B.D. (Tr. at 63-64.)

{¶ 11} Ryan reiterated that A.W. confessed and implicated B.D. and that B.D. subsequently confirmed A.W.'s story by confessing himself. (Tr. at 55-57.) Ryan admitted that, despite representations to B.D. to the contrary, the only prints recovered from the burglary scene belonged to A.W. (Tr. at 59.)

{¶ 12} The homeowner testified that he knew B.D. as a neighbor who sometimes cut his grass. (Tr. at 46-47.) He said he told B.D. he was going to be out of town and that B.D. did not have permission to be in his home. (Tr. at 47-51.)

{¶ 13} B.D.'s grandmother testified that she had custody of B.D. as a result of a children's services case. (Tr. at 83-84.) On the night of the burglary, B.D. and his girlfriend were playing a game or watching a movie on the television when B.D.'s grandmother decided to go out on the porch to drink a beer and smoke a cigarette. (Tr. at 78-79.) She went to the corner store to obtain the necessaries and, when she returned, she believed B.D. and his girlfriend were still engaged in the same pursuit because she could hear the television. *Id.* As she sat on the porch, she saw shadows moving in the neighbor's house and became suspicious because she knew he was on vacation. (Tr. at 79-80.) She approached to knock on his door to see if he had changed his mind about leaving, but became scared when she heard noises inside; she retreated and telephoned the police. *Id.* By the time the police arrived (which was no more than five minutes later in her estimation), B.D. and his girlfriend had joined her on the porch. (Tr. at 81-82.) When the

police called to interview B.D., she assented but did not think she had a choice in the matter. (Tr. at 82-83.)

{¶ 14} After hearing the evidence, the magistrate found beyond a reasonable doubt that B.D. had committed the offense of burglary. (Tr. at 98-99.) Accordingly, the magistrate also found him to be a delinquent minor. *Id.*; June 18, 2018 Jgmt. Entry. The magistrate's decision was immediately adopted by the trial court contemporaneously with its issuance. (June 18, 2018 Jgmt. Entry.)

{¶ 15} The defense filed an objection on June 28, observing that there was little evidence against B.D. apart from the confession given in a "strange" interview and that this was permitted into evidence despite a motion to suppress. (June 28, 2018 Objs.) Once the transcript of the hearing and trial was prepared, the defense supplemented the objections, arguing in greater detail that the confession should have been suppressed, that the evidence against B.D. was otherwise non-existent, and that the prosecution had failed to give appropriate notice of the caselaw on which it relied. (Aug. 24, 2018 Objs.)

{¶ 16} In a decision issued on November 8, 2018, the trial court denied each of the three objections. (Nov. 8, 2018 Decision & Jgmt. Entry.) The trial court reasoned that the interview with the police was not custodial (and thus, the *Miranda* safeguards were not triggered) and that it was not otherwise coercive. *Id.* at 6-9. It found that B.D.'s confession was sufficient evidence of his guilt. *Id.* at 9-10. It finally concluded that although motions before the court are required to cite authority, nothing precluded the prosecution from citing additional authorities in oral argument. *Id.* at 10-11.

{¶ 17} Following a hearing on November 19, 2018, the trial court placed B.D. on probation for the burglary offense. (Dec. 3, 2018 Jgmt. Entry.) B.D. now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 18} B.D. presents three assignments of error for review:

> [1.] The trial court erred in failing to suppress the statements this juvenile made to police in a non-custodial interview.
>
> [2.] The trial court erred in finding that the prosecution proved its case beyond a reasonable doubt.
>
> [3.] The trial court erred in determining that Juvenile Rule 19 allows the prosecution to withhold legal authorities it plans to rely upon in a motion to suppress hearing until closing argument for the trial.

## III.  DISCUSSION

### A.  First Assignment of Error – Whether the Trial Court Erred in Failing to Suppress the Statement B.D. made to the Police

{¶ 19}  In reviewing a decision on a motion to suppress, we afford deference to the trial court's factual determinations and review its recitation of historical facts for "clear error" but we review statements of law and the application of law to facts de novo.  *See, e.g.*, *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 20}  Generally speaking:

> The Fifth and Fourteenth Amendments require that a person be notified of his or her right to remain silent and the right to the presence of an attorney prior to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Where a suspect speaks freely to police after acknowledging that he understands his rights, a court may infer that the suspect *implicitly* waived his rights." (Emphasis sic.) *State v. Murphy*, 91 Ohio St.3d 516, 519, 2001 Ohio 112, 747 N.E.2d 765 (2001). "The determination of whether there has been an intelligent waiver of [the] right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

*State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 35.  Due process also protects juveniles such that *Miranda* warnings must also be given to juveniles.  *In re Gault*, 387 U.S. 1, 55 (1967).

{¶ 21}  A full *Miranda* analysis is only triggered, however, where the suspect is in "custody."  *In re D.B.*, 10th Dist. No. 17AP-83, 2018-Ohio-1247, ¶ 17, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 26.  We have recognized that "custody" is a situation in which "a reasonable person would have felt he was not at liberty to terminate the interrogation and leave."  *D.B* at ¶ 17, citing *Howes v. Fields*, 565 U.S. 499, 509 (2012); *see also Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004).  In this case, a juvenile (who was already on probation) was awakened, taken from his bed, and confronted in his home by the police and a non-parent adult who had legal custody of him.  (Tr. at 14, 37, 83-84, 111.)  He was not given the option of leaving or of discontinuing questioning–in fact the

officer questioning him strongly implied that questioning would only terminate when and if he cooperated. (Tr. at 19; State's Ex. G at 4:20-26 ("as long as you talk is the long it's gonna take").) Furthermore, B.D. was subjected to deceptive interrogation tactics and was not given the support of any adult advocate (his grandmother, far from informing him of his right to remain silent, repeatedly urged him to confess and accused him of lying when he denied the accusations). (Tr. at 18-22; State's Ex. G at 2:50-6:00.) Notwithstanding the lack of classic custody indicators such as physical restraint, lengthy duration, or transport to a holding facility, it may be tempting to find that this situation was one in which a reasonable person of B.D.'s age and experience, would not have felt at liberty to terminate the interrogation and leave. But that conclusion is foreclosed by B.D.'s attorney's decision to concede that the interview was "non-custodial." (B.D.'s Brief at 5; *see also id.* at 17 (commenting that "the defendant's motion to suppress focused entirely on coercion and did not address Miranda issues as it was clearly not a custodial interview"); Nov. 8, 2018 Decision & Entry at 2 (noting that the parties had agreed that the encounter "was a non-custodial interview").)

{¶ 22} Even when *Miranda* warnings are not required or have validly been waived, a confession must still be voluntary. *Dickerson v. United States*, 530 U.S. 428, 444 (2000). The burden of establishing the voluntariness of the confession is on the State and " 'the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.' " *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, ¶ 41-43, quoting *Gault*, 387 U.S. at 55. In that context, the Supreme Court of Ohio has also explained:

> In deciding whether a juvenile's confession is involuntarily induced, [a] court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement.

*In re Watson*, 47 Ohio St.3d 86 (1989), paragraph one of the syllabus. Moreover, this Court has recognized that " '[c]oercive law enforcement tactics may include, but are not limited to, physical abuse, threats, deprivation of food, medical treatment or sleep, use of certain psychological techniques, exertion of improper influences or direct or implied promises,

and deceit.' " *In re D.F.*, 10th Dist. No. 14AP-683, 2015-Ohio-2922, ¶ 12, quoting *In re N.J.M.*, 12th Dist. No. CA2010-03-026, 2010-Ohio-5526, ¶ 20, citing *State v. Getsy*, 84 Ohio St.3d 180, 189 (1998); *see also Fare v. Michael C.*, 442 U.S. 707, 727 (1979).

{¶ 23} In this case, the entire interview was short, consisted of a single encounter, and was conducted in B.D.'s grandmother's kitchen. (Tr. at 14, 64; State's Ex. G.) The detective's tone was friendly throughout, with no resort to physical force, threat, or deprivations of any kind. (State's Ex. G in passim.) Moreover, this was approximately 2 months before B.D.'s 16th birthday. *Compare* Tr. at 11-12 (interview date was Nov. 2, 2017) *with* Nov. 3, 2017 Compl. (B.D.'s birthdate is January 2002). He also evidently had some significant prior experience with the court system. (Tr. at 111 (discussing probation violations on two other juvenile cases).[3])

{¶ 24} On the other hand, the detective lied to B.D. about the state of the evidence against him when he asserted, on more than one occasion, that B.D.'s fingerprints were found at the scene. (Tr. at 18-20, 32; State's Ex. G at 3:10-15, 4:00-10, 4:35-5:10.) The general tenor of the interrogation was that the detective already knew B.D. to be guilty and was just looking for an explanation or verification of the details—not an uncommon tactic employed in interrogations. (Tr. at 18-21; State's Ex. G at 2:50-6:00.) In the final pitch the detective made to B.D. before B.D. admitted involvement, the detective implied that if B.D. told the truth, nothing much of consequence would come of the matter:

> [T]he difference between you and [A.W.] is, is that he came clean and, you know what, I walked away. And I'm gonna walk away with a smile - - - you know, I'm going to walk away with a happy face in this whole thing. So, with all this evidence that I have, I'd rather you go into this the same way he is, 'cause the whole idea here is not to lock you up and throw away the key, just gotta make sure you don't do it again.
>
> * * * So, I'm gonna ask you again, did you go in the house and take the change? Is that a yes or a no?

("Sic" notations omitted.) (Tr. at 21-22). B.D. responded, "Yes, sir." (Tr. at 22.)

{¶ 25} While the record indicates that the detective employed deceptive statements, psychology, and misleading implications to aid in obtaining a confession from B.D., B.D.'s

---

[3] B.D.'s counsel did not introduce evidence regarding his mental state, intelligence, or education level to help in rebutting the State's argument that the confession was voluntary; thus, we are unable to effectively consider those factors.

counsel's concession negates any finding that *Miranda* warnings were required or that this was a custodial interview such that B.D. was not free to leave. Given this and the other circumstances of the interview (e.g., short duration, friendly tone, no threats or deprivations), we cannot say that the interrogation was so deceptive that B.D.'s confession was involuntary.

{¶ 26} B.D.'s first assignment of error is overruled.

### B. Second Assignment of Error – Whether the Evidence was Sufficient

{¶ 27} Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 28} Burglary is defined in potentially relevant part as follows:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> > * * *
>
> (2) Trespass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
>
> (3) Trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense.

R.C. 2911.12(A)(2). An "occupied structure" is separately defined in part relevant to this case:

> (C) "Occupied structure" means any house * * * to which any of the following applies:
>
> (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

R.C. 2909.01(C)(1).

{¶ 29}  B.D.'s argument on this assignment of error rests on the assumption that the confession was wrongfully admitted into evidence.[4]  (B.D.'s Brief at 15-17.)  Though we agree with B.D. that the prosecution presented essentially no evidence linking him to the burglary at trial other than his own confession, we have already declined to reverse the decision on suppression.  B.D.'s confession was introduced into evidence and, viewing the evidence in a light "most favorable to the prosecution," that confession was enough. *Monroe* at ¶ 47.

{¶ 30}  We overrule B.D.'s second assignment of error.

## C. Third Assignment of Error – Whether the Trial Court Erred in Permitting the State to Orally Reference Authorities not Included in their Memorandum

{¶ 31}  B.D.'s counsel argues that, in the course of orally arguing against suppression, the prosecution referenced authorities that were not included in the State's memorandum in opposition.  (B.D.'s Brief at 17-20.)  Defense counsel argues that she would have been prepared to argue that those cases do not show that deception in a police interview is appropriate had she been given notice of the cases on which the State intended to rely.  *Id.* We agree that the rules regarding motions practice before the juvenile court require that any written motion be supported by a memorandum "containing citations of authority." Juv.R. 19.  We also agree that it is reasonable to conclude that Juv.R. 19 is intended to allow parties to argue to the court from a common understanding of the law that applies to the

---

[4] A third-degree felony burglary under R.C. 2911.12(A)(3) can be perpetrated in an empty house because all that is required is "[t]respass in an occupied structure * * * with purpose to commit * * * any criminal offense" therein.  R.C. 2911.12(A)(3).  But B.D. was only charged with the second-degree felony under division (A)(2) of R.C. 2911.12, which requires proof that, at the time of the offense, a "person other than an accomplice of the offender is present or likely to be present."  R.C. 2911.12(A)(2).  Thus, B.D. could have argued that the undisputed fact that the occupant of the home was known to have been on vacation should have precluded conviction for the second-degree felony because no person other than his accomplices were "present or likely to be present."  R.C. 2911.12(A)(2).  But, B.D.'s counsel did not argue that in either the trial court or in this Court on appeal.  Here again, our analysis is cut short by the limitations created by B.D.'s counsel's problematic representation.

case, rather than employing surprise to gain the upper hand. As an explicit example of this general principle, the Supreme Court of Ohio Rules of Practice require litigants who intend to present oral argument regarding authorities not cited in their written submissions, to present a list of additional authorities no later than seven days before the oral argument. S.Ct.Prac.R. 17.08(A). Thus, as a matter of fairness we agree that the State should not have been permitted to rely on authorities during oral argument that it had not presented in its written submissions.

{¶ 32} Yet, though the defense commented on the additional authorities, defense counsel did not formally object or request a recess to review and respond to the authorities raised orally by the State. (Tr. at 41-43.) Moreover, whether deception was a permissible tactic for the police to employ was one of the central issues in the case; thus, defense counsel should have been prepared to argue that point, regardless of what the State chose to cite or not cite. A number of cases from the United States and Ohio Supreme Courts stand for the proposition that deception is a factor to consider in weighing whether an interrogation was coercive, but that deception, on its own, will not necessarily render a confession involuntary. *Oregon v. Elstad*, 470 U.S. 298, 317 (1985); *Fare*, 442 U.S. at 727; *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶ 22; *State v. Wiles*, 59 Ohio St.3d 71, 81 (1991).

{¶ 33} Thus, while we agree that a litigant should not be permitted to blindside opposing counsel with additional authorities in an oral argument that were not cited in briefing related to the topic of the argument, in this case, where the issues were clear, and where defense counsel did not formally object or seek a recess to address the orally referenced caselaw, we find this anomaly to have been harmless. We overrule B.D.'s third assignment of error.

## IV.  CONCLUSION

{¶ 34} Because of B.D.'s counsel's concession about the nature of the police interview by which B.D. confessed to the crime(s) he was accused of, we cannot find that B.D.'s confession to have been in violation of *Miranda*. Accepting the concession that the interview was non-custodial, we do not find, on the factual record in this case, that the confession was otherwise involuntary. On the question of evidentiary sufficiency, because B.D.'s counsel failed to raise an argument about whether a person was "present or likely to be present" in the house, we cannot address that issue. As his confession was admitted at

trial, there was otherwise sufficient evidence of B.D.'s guilt.  Finally, though we agree that courts should not permit argument by ambush and should generally refrain from allowing parties to rely in oral argument on authorities not cited in briefing, we find any such error to be harmless on the facts of this case.  Therefore, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

BEATTY BLUNT and NELSON, JJ., concur.

NELSON, J., concurring.

{¶ 35}  I join in the judgment of the court and agree with the principal rationales expressed in overruling B.D.'s first and second assignments or error. With regard to the third assignment of error, relating to an issue that I agree was not preserved, I would not want to suggest that the scope of permissible discussion of case law during oral argument on a suppression motion lies other than within the sound discretion of the trial court.

———————————